# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: July 27, 2017

Ms. Erin Elizabeth Butcher
Office of the Attorney General
Employment Law Section
30 E. Broad Street
23rd Floor
Columbus, OH 43215

Mr. Daniel Henry Klos
Law Office
4591 Indianola Avenue
Columbus, OH 43214

 Re: Case No. 16-4052, *Sean Snyder v. Ohio Dept. of Rehabilitation*
  Originating Case No. : 2:14-cv-00300

Dear Counsel:

  The Court issued the enclosed Opinion today in this case.

                Sincerely yours,

                s/Karen S. Fultz
                Case Manager
                Direct Dial No. 513-564-7036

cc:  Mr. Richard N. Coglianese
   Mr. Richard W. Nagel

Enclosure

Mandate to issue

<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 17a0443n.06

Case No. 16-4052

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jul 27, 2017
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| SEAN SNYDER, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE SOUTHERN |
| THE OHIO DEPARTMENT OF | ) DISTRICT OF OHIO |
| REHABILITATION AND CORRECTION, | ) |
| | ) |
| Defendant-Appellee. | **O P I N I O N** |

**Before: SUTTON, McKEAGUE, and THAPAR, Circuit Judges.**

**McKEAGUE, Circuit Judge.** Plaintiff Sean Snyder worked as a corrections officer in an Ohio prison. After Snyder pepper sprayed an inmate in a wheelchair, the prison's female warden fired him. Snyder then sued the Ohio Department of Rehabilitation and Correction under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, alleging that the warden discriminated against him because of his sex. After discovery, the district court granted summary judgment for the Department. For the following reasons, we affirm.

I

The prison's security camera captured the lead-up to this litigation's primary event: the pepper-spray incident. One morning in 2012, Snyder ordered an inmate to leave the prison's shower area. The inmate refused. Snyder responded by raising a pepper-spray canister towards the inmate's face. This subdued the inmate enough so that Snyder could eventually grab the

inmate's wheelchair and push him back to his cell.  The video shows that when the two reached the cell's entrance, the inmate wheeled himself inside.  Snyder, rather than simply shutting the cell, followed behind.

Unlike the journey from the shower area to the cell, however, no camera captured what happened inside.  According to Snyder, the inmate became agitated, spun his wheelchair around, and then started to push off the chair's arms toward Snyder.  The officers who later reviewed the incident found Snyder's story implausible.  But whatever happened, the conflict ended with Snyder pepper spraying the inmate.

Snyder's supervisor reported the incident, which triggered a multi-layer review process. First, the Department convened a use-of-force committee (headed by two men) to determine whether Snyder appropriately deployed his pepper spray.  That committee (which, again, was headed by two men) disbelieved Snyder's account and concluded that he used excessive and unjustified force.  Next, the committee sent its report to the warden (a woman) who agreed with its findings and started a disciplinary investigation.  The investigator (a man) also found that Snyder acted inappropriately.  Then, Snyder's case moved on to a pre-disciplinary hearing where the presiding officer (a man) found that Snyder broke three Department rules.  Finally, the warden (as the reader might notice, the only woman in in this chain) fired Snyder.

After Snyder's termination, he complained to the Equal Employment Opportunity Commission, which declined to intervene.  He then sued the Department for sex discrimination. The Department moved for summary judgment following discovery, arguing that Snyder lacked sufficient evidence to support his claim. The district court agreed and granted the motion. *Snyder v. Ohio Dep't of Rehab. & Correction*, No. 2:14-CV-300, 2016 WL 7852524, at *6 (S.D. Ohio July 19, 2016).

This appeal followed.

## II

We review the district court's grant of summary judgment de novo. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). A party may use a summary judgment motion to challenge the sufficiency of his opponent's evidence—essentially, to challenge his opponent to "put up or shut up." *Id.* at 149. Unless the non-movant produces evidence which would allow a reasonable jury to return a verdict for him, the court must grant the motion. *See id.* at 151. The court draws all reasonable inferences in the non-movant's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). The non-movant cannot rest on this standard alone, however. He must present significant and probative evidence to support his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III

To survive summary judgment here, Snyder must produce sufficient evidence for a reasonable jury to find that the Department discriminated against him for being a man. *See Simpson v. Vanderbilt Univ.*, 359 F. App'x 562, 568 (6th Cir. 2009). We analyze this claim under the burden-shifting framework from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See id.* Under that framework, Snyder must first establish a prima facie case of discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993). If he does, the Department must articulate a nondiscriminatory reason for his firing. *See id.* at 506–07. Then, it is up to Snyder to prove that the proffered reason is really a pretext for discrimination. *See id.* at 515.

Although the district court concluded that Snyder failed to make out a prima facie case, and we in no way call this an error, we find it simpler here to skip ahead to the pretext inquiry.

*See Thomas v. City of Columbus*, 854 F.3d 361, 364 (6th Cir. 2017) ("[W]e may affirm a decision of the district court for any reason supported by the record, including on grounds different from those on which the district court relied.") (citation omitted). The warden offered a nondiscriminatory reason for firing Snyder: he used excessive and unnecessary force on an inmate in a wheelchair. Thus, Snyder must produce sufficient evidence to show this reason is a pretext for her true motive. *See Hicks*, 509 U.S. at 515.

Ultimately, Snyder must actually make two showings: both that a reasonable jury could find that the warden's proffered reason for his firing was not the real reason *and* that her real reason was unlawful anti-male discrimination. *See id.* Snyder fails to deliver any significant, probative evidence to support either conclusion. His "evidence" amounts to this: 1) his opinion that he used force appropriately and that the investigation was a sham; and 2) a female lieutenant once improperly used pepper spray and was only suspended, not fired.

To start, nothing about the investigation's supposed deficiencies creates a reasonable inference that the warden fired him due to anti-male bias. Sometimes, a plaintiff can show pretext by demonstrating that his employer's stated reason for firing him had "no basis in fact." *Simpson*, 359 F. App'x at 569. But Title VII exists to prohibit discrimination—not to litigate the accuracy of employment decisions. *See Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012). If an employer believes her lawful reason for firing an employee, the employee cannot establish pretext simply because the reason "is ultimately shown to be incorrect." *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001).

Here, the warden acted on several male officers' findings that Snyder used excessive force. Even if a jury could believe that Snyder justifiably used force—a doubtful proposition—

Case No. 16-4052, *Snyder v. Ohio Dep't of Rehab. and Correction*

he offers no reason to doubt that the warden believed otherwise. Only Snyder's speculation[1] supports the notion that she agreed with these men's findings because Snyder himself was a man.

Next, that a female lieutenant once used pepper spray improperly without being fired adds little to Snyder's case. Sometimes, a plaintiff can show pretext by comparing his discipline to that received by others. *See, e.g., Madden v. Chattanooga City Wide Serv. Dep't*, 549 F.3d 666 (6th Cir. 2008). But the employees' misconduct must be similar enough, and the discipline dissimilar enough, to raise inferences regarding pretext and discrimination. *See id.* For example, a company saying that it fired a black worker for setting off firecrackers at a worksite while white workers did so with impunity would create such inferences. *See id.*

The similarity between the incidents here begins and ends with pepper spray. The lieutenant inappropriately sprayed a handcuffed inmate while she tried to assist others in restraining him—a legitimate endeavor marred by poor judgment. But nobody distrusted her story. And, at any rate, the Department took her error seriously: she received a week suspension. By contrast, Snyder followed an inmate into his cell after a situation deescalated—an inexplicable action with little or no utility. Further, the investigating officers doubted Snyder's honesty. On these facts, a jury could not reasonably chalk up Snyder's stiffer punishment to anti-male bias.

---

[1] Or, perhaps, it is more accurate to call this his counsel's speculation. Snyder appears to have little conviction about the warden's supposed misandry. *See* R. 21 Snyder Dep., PID 357 ("I don't know the reasoning behind why Warden Richard terminated me. . . . She could have hated me because I was bald.").

Case No. 16-4052, *Snyder v. Ohio Dep't of Rehab. and Correction*

IV

Snyder views his case as raising profound issues about discrimination. He reminds us that it "is no longer 1964." Appellant's Brief at ix. His case turns, however, on a simple issue: whether a plaintiff can proceed to a jury trial based wholly on unsupported speculation. There is a simple answer: he cannot. Thus, we affirm.